1

1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
2                       HOUSTON DIVISION

3
     HARVEST FAMILY CHURCH,      *    4:17-CV-02662
4    ET AL                       *
                                 *
5    VS.                         *    10:02 a.m. to 10:46 a.m.
                                 *
6    FEDERAL EMERGENCY           *
     MANAGEMENT AGENCY, ET AL    *    SEPTEMBER 8, 2017
7
                    TELEPHONIC STATUS CONFERENCE
8          BEFORE THE HONORABLE KEITH P. ELLISON
                       Day 1 of 1 Day
9
     TELEPHONIC APPEARANCES:
10
     FOR THE PLAINTIFFS:
11   Mr. Daniel Howard Blomberg
     Mr. Eric Christopher Rassbach
12   Ms. Diana Marie Verm
     The Becket Fund for Religious Liberty
13   1200 New Hampshire Avenue, N.W.
     Suite 700
14   Washington, D.C. 20036
     (202) 955-0095
15
     FOR THE DEFENDANTS FEDERAL EMERGENCY MANAGEMENT AGENCY AND
16   WILLIAM B. LONG:
     Ms. Kari D'Ottavio
17   Ms. Lesley Farby
     U.S. Department of Justice
18   20 Massachusetts Avenue NW
     Washington, DC 20530
19   (202) 305-0568
          and
20   Ms. Michelle Buckalew
     Ms. Angelica Saavedra
21   Mr. Brock Pierson
     Federal Emergency Management Agency
22   Office of General Counsel
     500 C Street SW
23   Suite 840
     Washington, DC  20472
24

25

2

1  **IN COURT APPEARANCES:**

2  **FOR THE DEFENDANTS FEDERAL EMERGENCY MANAGEMENT AGENCY AND WILLIAM B. LONG:**

3  Mr. Daniel David Hu
   Office of the U.S. Attorneys Office

4  1000 Louisiana
   Suite 2300

5  Houston, Texas 77002
   (713) 567-9518

6
   Court Reporter:

7  Laura Wells, RPR, RMR, CRR
   515 Rusk, Suite 8004

8  Houston, Texas 77002

9  Proceedings recorded by mechanical stenography.
   Transcript produced by computer-assisted transcription.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       **PROCEEDINGS**

2            THE COURT:  Good morning and welcome.  We are on

3    the record.  This is Keith Ellison.  We'll take

4    appearances of counsel, beginning with plaintiffs, please.

10:04:59   5            MR. RASSBACH:  Eric Rassbach for the plaintiffs.

6            THE COURT:  One more time, please.

7            MR. RASSBACH:  Eric Rassbach.

8            THE COURT:  Thank you very much.

9            MS. D'OTTAVIO:  Good morning, Your Honor.  This

10:05:13   10   is Kari D'Ottavio for defendants.

11           THE COURT:  Thank you.

12           MR. HU:  Daniel Hu, local counsel for defendants.

13           THE COURT:  And for the defendants, are you with

14   main justice?

10:05:21   15           MS. D'OTTAVIO:  Yes.

16           THE COURT:  Welcome to all.  We wanted to have an

17   early hearing because the timeframe seems quite telescoped

18   on relief efforts; and I wanted to see if we could put in

19   place at least a rough schedule of briefing and, if

10:05:41   20   necessary, an evidentiary hearing.

21       Have you had a chance to discuss among yourselves any

22   of these matters?

23           MS. D'OTTAVIO:  Yes, Your Honor.  We actually

24   conferred earlier this morning about a proposed briefing

10:05:55   25   schedule.

1          THE COURT:  I'm sorry.  Who is speaking, please?

2     Who is speaking?

3          MS. D'OTTAVIO:  Sorry, Your Honor.  This is Kari

4     D'Ottavio for defendants.

10:06:03    5          THE COURT:  Okay.

6          MS. D'OTTAVIO:  Counsel conferred this morning

7     about a briefing schedule, and defendants proposed the --

8     following the local rule for response brief, which would

9     give us 21 days to respond and per your rule of ten days

10:06:20   10     for a reply.

11          And plaintiffs' counsel -- correct me if I am wrong --

12     proposed a more condensed schedule, September 18th, I

13     believe, for defendants to respond and that following

14     Friday, which I believe is September 22nd, for a reply.

10:06:43   15          And the -- one new piece of news that has come to

16     light since, Your Honor, is FEMA has granted an extension

17     for applying for funds from the public assistance program.

18     So it was originally September 26th, 2017; and it is now

19     November 22nd, 2017.  So that we are hoping to take that

10:07:08   20     into consideration with the briefing schedule.

21          THE COURT:  Well, I'm glad to know that.  I had

22     not heard that.  The more immediate problem, though, is

23     just getting some repairs made to the properties, no?

24          MR. RASSBACH:  Yes, Your Honor.  This is Eric

10:07:27   25     Rassbach for plaintiffs.  That's part of the issue here,

*Laura Wells, CRR, RDR*

1    as we tried to set forth in the motion.  The -- our client

2    -- some of our clients are having to figure out right now

3    whether, for example, they have to demolish part of their

4    facility; and the way, you know, FEMA works is that if you

10:07:49   5    don't get the inspection by somebody from FEMA ahead of

6    time, then they can say, well, we're not going to

7    reimburse you for the demolition.

8        So there are sort of a lot of decisions like that that

9    have to get made in the fairly near future about these

10:08:07   10   things.  And so it's great that they have moved out the

11   deadline for filing the form; but really, the real issue

12   is just being able to get into the process, despite the

13   fact that we -- you know, that the initial form says on

14   Line 3, "What is the purpose of the facility?"  That's our

10:08:27   15   -- that's our issue.

16       So if we could -- we certainly welcome the fact that

17   they have moved out the formal filing deadline; but sort

18   of the practical, on-the-ground effect is still there.

19       The other thing I would just mention, Your Honor, is

10:08:44   20   that at least from, you know, prior discussion in public

21   about this, there is also some possibility that FEMA is

22   going to run out of money.  There is, obviously, Harvey.

23   I think it's the largest national disaster in U.S. history

24   in terms of dollar amounts; and then we're about to get

10:09:08   25   Irma in Florida.  And so if we have to sort of go to the

*Laura Wells, CRR, RDR*

1    back of the queue, if you will, to get funds, you know, by

2    the time we get to the front, there may not be anything

3    left.  So that's another part of it.

4        I would say the main issue, though, is just having to

10:09:27  5    make decisions right now about things like demolition

6    without being able to access the process.

7            THE COURT:  Let me ask this:  Do the parties

8    agree that this is purely a legal question, or do we

9    actually need to take evidence?

10:09:45  10           MS. D'OTTAVIO:  Your Honor, this is Kari

11   D'Ottavio for defendants.  And we would think that this is

12   a purely legal question at this point.  It's whether or

13   not the plaintiff churches are eligible for FEMA relief

14   under the public assistance program.  It kind of goes to

10:10:04  15   the heart of what plaintiffs are asking and why they think

16   that even applying for FEMA aid, which they have not yet

17   done, is futile if they think that they are categorically

18   excluded from such funds and want a decision on that

19   issue.

10:10:22  20       And we would -- we would propose -- well, we would

21   argue that there is no categorical exclusion.  So, yes, it

22   would be a purely legal question at this point.

23           THE COURT:  Well, are you alleging that they

24   don't have standing because they haven't yet replied or --

10:10:38  25           MS. D'OTTAVIO:  That's certainly -- certainly an

*Laura Wells, CRR, RDR*

1   issue.

2           THE COURT:  Well, if it's an issue, then that's a

3   totally different issue than the one I thought we would be

4   deciding.

10:10:53    5           MR. RASSBACH:  If the plaintiffs -- I'm sorry.

6   This is Eric Rassbach for plaintiffs.

7           If the defendants will, you know, agree to process our

8   claim the same way that they would process, say, The Alley

9   Theater, which is also, you know, damaged and a nonprofit,

10:11:10   10  you know, then I don't think the Court actually has to

11  decide anything.  If they just agree that they will not

12  exclude us from the process, we'll, you know, file our

13  forms tomorrow and get in there.

14          But I think that the issue is that they -- you know,

10:11:30   15  they have this in their policies.  I mean, it's not --

16  it's not something where this is --

17          THE COURT:  I quite agree with that, but I would

18  hate to see us get hung up on an argument about no case or

19  controversy.

10:11:47   20          MR. RASSBACH:  Well, I agree with that, Your

21  Honor.  We'll file the forms now if that, you know, avoids

22  that issue.  We just -- under their current policy, it's

23  futile.

24          THE COURT:  I understand, but I am -- I

10:12:02   25  understand perfectly what you are saying.  On the other

*Laura Wells, CRR, RDR*

hand, I would feel somewhat remiss about ordering FEMA to
grant money awarded to organizations that haven't even
applied for it.  That seems like a dangerous precedent,
too.

10:12:20

MS. D'OTTAVIO:  And, Your Honor --

MR. RASSBACH:  And I agree with that, Your Honor.
We're not actually asking you to even order a monetary
amount, just to be very clear.  We're actually just asking
to be let in the door of the process, so to speak.  And

10:12:36

so, you know, we're not actually asking for an order of
funding at the end of the day.  We're really asking for
the ability to get processed like any other nonprofit.

THE COURT:  But the same point.  The same point.
It's going to be -- we're going to lack case or

10:12:55

controversy status unless you have made the initial
application, I fear.

MR. RASSBACH:  Okay.  Well, we will take -- if
that's -- if that will ease the process, we'll just go
ahead and do it.  And then if we get turned down, we'll --

10:13:16

it will be even clearer.

THE COURT:  I think we're probably going to have
a long appellate tail on this case, and I would like to at
least steer clear of defects that might prevent an
appellate court from reaching a full-body decision.

10:13:33

MR. RASSBACH:  I think that is -- I think you are

*Laura Wells, CRR, RDR*

1  probably right about that, Your Honor.

2          MS. D'OTTAVIO:  Your Honor, this is Kari

3  D'Ottavio for the defendants.  And plaintiffs --

4  plaintiffs seem to want FEMA to accept their application

10:13:49  5  and process them like they would any other private

6  nonprofit, and FEMA absolutely would.  Every application

7  is assessed on a case-by-case basis.  There is no blanket

8  exclusion.  They are absolutely not prevented from

9  applying in any way, shape or form.

10:14:06  10      This really goes to the -- the heart of the debate in

11  this case is how this -- how this policy works in action;

12  and if plaintiffs were to apply, then they would

13  absolutely be considered, just like any other private

14  nonprofit, and the same analysis would go into play.  But

10:14:22  15  again, they have not yet applied.  And if they do then,

16  you know, FEMA will absolutely assure that they will be

17  processed just like any other private nonprofit.  That's

18  how -- that's how the policy works.

19          THE COURT:  Well, but they are not considered

10:14:37  20  like other private non-profits, are they?  I mean, they

21  are not -- the fact that it's a religious organization

22  takes it out of the category of other nonprofits, does it

23  not?

24          MS. D'OTTAVIO:  Well, not necessarily.  Just

10:14:56  25  because they are a religious institution does not

*Laura Wells, CRR, RDR*

1   categorically exclude them from that process if they --

2   it's a case-by-case determination whether the services

3   that an organization provides, whether they are a

4   religious organization or not, is essentially government

10:15:18   5   services or primarily government services.  So that would

6   be the analysis that goes into the application process,

7   regardless if it's a religious institution or not.  Every

8   private nonprofit would have to be assessed in the same

9   way.

10:15:36   10   THE COURT:  Okay.  Now it begins to sound like we

11   will have an evidentiary hearing because I'm not sure what

12   criteria I'm going to be asked to apply in determining

13   whether these particular religious organizations are

14   eligible for FEMA funds.

10:15:51   15   MS. D'OTTAVIO:  Right.  And if this is --

16   MR. RASSBACH:  Your Honor, if this is --

17   MS. D'OTTAVIO:  -- declined and they challenge

18   the denial, then it would be based on, you know, the

19   specifics of that case.  What the plaintiffs are arguing

10:16:03   20   now is it's futile for them to even apply because they are

21   categorically excluded, which we would argue is certainly

22   not the case.

23   MR. RASSBACH:  Your Honor, I think -- I think we

24   are sort of -- there is a little bit of leveraging going

10:16:20   25   on here about what is a religious organization.

1    So a religious organization, let's say like Seven

2  Acres Jewish Retirement Home over on Braes Bayou, which

3  also got flooded, they are -- they can apply because they

4  are not, you know, a house of worship and they don't use

10:16:40    5  more than 50 percent of their -- you know, they are not

6  more than 50 percent religious use as -- you know, that is

7  the rule under the FEMA policy guide.

8    But if you go right across the bayou to Beth Israel,

9  the reform temple across the bayou from Seven Acres,

10:16:55   10  essentially, they are not going to be eligible, even

11  though they got three feet of water in their sanctuary.

12    So it's not -- you know, I think that the issue is

13  they are going to want to say, oh, it's just

14  discretionary; but then somehow the -- they have a rule

10:17:13   15  saying if it's more than 50 percent religious usage, then

16  you are out.  And we have said in our pleadings and in our

17  motion that it's -- that it's more than 50 percent.

18    So, you know, I hear -- I hear what she is saying but

19  that's not -- that's not really -- you know, sure, it's

10:17:34   20  not a categorical exclusion based on the fact it's a

21  religious nonprofit.  It's based on the 50 percent rule.

22  And we are saying we are more than 50 percent a house of

23  worship.  You know, we are not going to lie on the form

24  saying it's not a house of worship.

10:17:52   25    MS. D'OTTAVIO:  And, Your Honor, I would just

1    like to respond saying it's not a discretionary, you know,

2    analysis.  FEMA has to apply the terms of the statute,

3    which explicitly requires that private non-profits provide

4    essential services of a governmental nature to the general

10:18:09    5    public, and this is where this 50/50 rule comes -- comes

6    into play.

7        So if they are not providing primarily services of a

8    governmental nature -- and primarily religious services

9    would not necessarily count as a governmental nature by

10:18:25    10    virtue of the fact that they are religious services --

11    then they would not count as an eligible private

12    nonprofit.  But again, it's a case-by-case determination

13    based on the factors and the regulations that are in

14    place.

10:18:44    15        THE COURT:  But it sounds like the issue that

16    FEMA needs to decide is being conceded by the plaintiffs.

17        MS. D'OTTAVIO:  Well, I mean, FEMA would, you

18    know, make that determination themselves; but if that is

19    the case, then that is simply adhering to what the statute

10:19:09    20    mandates.

21        THE COURT:  I see.  Okay.  Well, it sounds to me

22    still like we have a fairly narrow legal question which

23    is, I would presume, whether *Trinity Lutheran v. Comer*,

24    C-o-m-e-r, controls this case or not.  Isn't that our

10:19:36    25    issue?

Laura Wells, CRR, RDR

13

1    MS. D'OTTAVIO:  That is -- that is certainly an

2  issue that, you know, plaintiff talked about and we can

3  certainly respond to.  We believe that *Trinity Lutheran* is

4  certainly distinguishable from -- from the facts of this

10:19:50  5  case.

6    THE COURT:  Well, what is the distinction?

7    MS. D'OTTAVIO:  So *Trinity Lutheran,* that church

8  was excluded from the program, the state program simply

9  because it was a church.  It was otherwise eligible for

10:20:07  10  the grant at issue.

11    And here, churches would be excluded not because of

12  their status or identity as a church but because of the

13  function that they serve.

14    So there is, you know, many churches that provide, for

10:20:18  15  example, a soup kitchen or a homeless shelter; and that

16  would presumably count as an essential government service.

17  And the issue would be whether they primarily serve

18  something along those lines or something, you know,

19  strictly, you know, religious services.

10:20:36  20    And if they provide primarily religious services, that

21  would fall outside the intent of definitions provided in

22  the Stafford Act, which is to provide assistance to state

23  and local governments.  So it's not necessarily a

24  categorical exclusion, like in *Trinity Lutheran*, simply

10:20:53  25  because it was a church.  It's a case-by-case analysis of

*Laura Wells, CRR, RDR*

1    whether -- of the services that a particular religious

2    institution provides.

3        And I would just like to add that in the past, in the

4    past ten years even, FEMA has provided funds to hundreds

10:21:10    5    of religious institutions that have met the criteria laid

6    out in the regulation.  So it is certainly not the case

7    that one's status as a church precludes them from the

8    grant at issue.

9        So we would -- we would proffer that *Trinity Lutheran*

10:21:31   10    is not -- does not bear on this case, and it's certainly

11    distinguishable.

12        THE COURT:  Okay.  Well, it sounds like -- it

13    sounds like, if I am understanding the government's

14    position, that we have -- we first have to await a factual

10:21:47   15    resolution of plaintiffs' applications; and it could be

16    even that two of the churches are going to qualify for

17    FEMA funds and one will not.  Possible?

18        MS. D'OTTAVIO:  So I -- I would say that it is

19    certainly possible that, you know, one may -- one may be

10:22:11   20    eligible and one may be not, specifically in the case of

21    one of the churches who has been providing sheltering

22    services.

23        So even if that -- it's my understanding that even if

24    that church were otherwise, you know, an ineligible PNP

10:22:29   25    because they provide primarily religious services, they

1   still could be reimbursed for the services they provided

2   in the aftermath of Hurricane Harvey, depending on if they

3   have some sort of agreement set up with the state to

4   provide those services.

10:22:43   5   So that could be a case where they would be eligible

6   for reimbursement funds and the other churches could not

7   be.  So again, this just underscores the fact that it is a

8   case-by-case analysis that FEMA would undertake for these

9   three churches, along with any other private nonprofit

10:23:01   10   that applies.

11          MR. RASSBACH:  Just so -- this is Eric Rassbach

12   for the plaintiffs again -- Your Honor is aware, the PNP

13   facility questionnaire that FEMA puts out, the third line

14   says, "What was the primary purpose of the damaged

10:23:09   15   facility?"

16          And for all three of our clients, you know, the answer

17   -- the true answer to put on that line is church or house

18   of worship.  So, you know, we can put that on there.  And

19   then, if you look at the FEMA policy guide, their

10:23:32   20   published, you know, written policy guide that they have

21   out there --

22          THE COURT:  Maybe there is just a semantic nuance

23   here.  I can imagine that a church would list itself as a

24   house of worship but also provide shelter and meal service

10:23:49   25   for the disadvantaged.  And if I understand the

*Laura Wells, CRR, RDR*

1    government's position, that might nonetheless entitle the

2    church to government funds because, if denominated a

3    church or denominated something else, it is providing care

4    that the government would otherwise need to provide.

5         MS. D'OTTAVIO:  That's exactly right, Your Honor.

6    That is our position that it's not necessarily because

7    they are a house of worship that they wouldn't be

8    eligible.  It depends on the services that they provide.

9    If they provide stuff like sheltering services or, you

10   know, for example, a soup kitchen, you know, run out of

11   the church or a homeless shelter, I mean, these are the

12   types of -- you know, that would fall in the category of

13   essential government-type services that the statute is

14   intended to -- to reimburse for.

15        MR. RASSBACH:  Your Honor, I mean, I hear what

16   opposing counsel is saying; but it's not what FEMA's

17   written policies say or how they've treated appeals.

18        So, for example, their policy says that facilities

19   established or primarily used for religious activities are

20   simply not eligible if it is used more than 50 percent of

21   the time for religious activities --

22        THE COURT:  You are going too fast.  You are

23   going too fast.  Start the quote over again.

24        MR. RASSBACH:  Sure.  It says, quote, Facilities

25   established or primarily used, end quote, for religious

*Laura Wells, CRR, RDR*

1    activities are simply, quote, not eligible, end quote.

2    That's on 12 of the -- on Page 12 of the FEMA policy

3    guide.  And if it is used -- established or used for more

4    than 50 percent of the time for, quote, religious

10:25:36    5    activities such as worship, proselytizing, religious

6    instruction, it is not eligible.

7        Then if you look at how they have applied that in

8    practice in appeals, these are not, you know, not just the

9    policy.  It's also decisions that were -- that they've

10:25:56   10    made.  You know, they don't actually provide it.

11        So if you look at the *Mount Nebo Bible Baptist Church*

12    appeal that they've decided, they denied the grant because

13    even though they did provide literacy programs, clothing

14    distribution, food and nutrition programs, they couldn't

10:26:19   15    prove that more than -- you know, that enough of their

16    activities were, quote-unquote, nonreligious.

17        Now, of course, from the viewpoint of the religious

18    institutions, handing out -- you know, handing out

19    literacy, clothing distribution, food, nutrition, soup

10:26:32   20    kitchen, it is religious.  That is a religious activity

21    from their point of view, and maybe that's just semantics.

22    But the point is that they -- FEMA says we're going to

23    decide how much of your institution is religious, and then

24    we're going to do that.

10:26:48   25        That is also a problem just, you know, from a

*Laura Wells, CRR, RDR*

1    constitutional standpoint as well.  If you look at the

2    *Hosanna-Tabor* case that got decided a few years ago in

3    2012, the Supreme Court said, you know, you can't decide

4    whether a particular position is a ministerial position or

10:27:09   5    not based on using a stopwatch.

6              THE COURT:  Yeah.  I understand what you are

7    saying, and I agree that the policy as written seems quite

8    clear.  It would not be the first time that the common law

9    of government grantsmanship differs from the written

10:27:25   10   policy of government grantsmanship.  I mean, that happens.

11        We're going to take a 15-minute break.  Thank you very

12   much.

13             MS. D'OTTAVIO:  Thank you, Your Honor.

14             MR. RASSBACH:  Thank you, Your Honor.

10:27:55   15    (Recess from 10:27 a.m. to 10:40 a.m.)

16             THE COURT:  Okay.  Do we have everybody back?

17   The defendants, Mr. Hu is here in the courtroom.

18             MS. D'OTTAVIO:  Yes, Your Honor.  This is Kari

19   D'Ottavio for the defendants.

10:40:56   20             MR. RASSBACH:  Yes.

21             THE COURT:  Any further thoughts?

22             MR. RASSBACH:  I would add, Your Honor, that --

23   this is Eric Rassbach for the plaintiffs again -- if you

24   look at, for example, this *Unitarian* case that they

10:41:11   25   decided at the end of 2015, the *Community Church Unitarian*

1   *Universalist* appeal decided December 31st, 2015, they

2   found it ineligible.  FEMA found it ineligible because it

3   believed that the building was, quote, established for

4   religious purposes, end quote.

10:41:26   5       Then if you look at the decision they -- you know,

6   they go through the applicant's articles of incorporation

7   which says it was, you know, organized for the purpose of

8   practicing the principles of the Unitarian Universalist

9   faith, looked at the bylaws.

10:41:44   10       So, you know, I hear what Ms. D'Ottavio is saying; but

11   it just isn't how FEMA has done things.  And if they are

12   really going to change their position so that, you know,

13   someone that provides a lot of public services suddenly is

14   allowed, then they need to make that a lot clearer.

10:42:04   15       And I don't see why they should have a problem

16   agreeing to the Court right now that they will treat us

17   just like anyone else and that they won't treat us like

18   this Unitarian Universalist Church that they denied just

19   two years ago.

10:42:19   20       THE COURT:  Well, the world has changed since two

21   years ago though.  I mean, I think *Trinity Lutheran* was an

22   epochal decision.

23       MR. RASSBACH:  Well, I certainly agree it's a

24   very important decision.  I'm just saying that if FEMA was

10:42:35   25   looking at -- you know, if the policy that they are saying

1    that they want to keep applying in their policy guide

2    tells them to look at articles of incorporation and bylaws

3    rather than, you know, what are we doing in the world and

4    providing services in lieu of the government, then, you

10:42:55    5    know, it's not -- it's not crazy for my client to say,

6    gosh, you know, I guess I'm out of this.

7        I'm also -- my articles of incorporation say that I'm

8    incorporated for religious purposes, too.  So, you know,

9    maybe the world has changed; but FEMA needs to announce

10:43:11   10    that it's changing, too.

11        THE COURT:  Well, I'm still -- I'm still stuck on

12    the issue of standing.  And it seems to me that, at the

13    very least, we need to get plaintiffs to file whatever

14    application is specified for the kind of relief that's

10:43:31   15    desired; and I don't -- I don't really think we have a

16    cognizable case unless the plaintiffs do that.

17        MR. RASSBACH:  Okay, Your Honor.  Well, I think

18    we can react to that quickly.

19        THE COURT:  And so I think I'll stay the case

10:43:54   20    right now; and if an application is filed for FEMA funds,

21    then I think we can use our usual court schedule for a

22    response to preliminary injunction application and then

23    the reply.

24        But it wouldn't hurt for you guys to talk and see if

10:44:26   25    before you go through the whole application process there

*Laura Wells, CRR, RDR*

1   is some way of tailoring the application so that it would

2   meet FEMA's standards.  We can save ourselves a lot of

3   litigation expense.

4               MR. RASSBACH:  Well, we can cut out the factual

10:44:46   5   part of it, too.

6               THE COURT:  I mean, I have to -- going back to

7   the question of whether we have a legal question or a

8   factual question, it seems to me we, in sequence, have

9   both.  We first have a factual question as to whether the

10:44:58  10   churches qualify under what FEMA maintains its rubric is.

11   And then we have the question of, if the churches do not

12   qualify, whether that's a violation of the free exercise

13   clause.  I mean, am I wrong about that?

14               MS. D'OTTAVIO:  This is Kari D'Ottavio for

10:45:28  15   defendants.  I think that makes sense, Your Honor.  I

16   would just like to clarify the schedule you laid out.

17   Once plaintiffs apply for the funds --

18               THE COURT:  I think they have to amend their

19   complaint and amend their request for preliminary

10:45:42  20   injunction because, otherwise, we really can't proceed.

21               MS. D'OTTAVIO:  Okay.  Thank you, Your Honor.

22               THE COURT:  Is there anything else we can

23   accomplish today?

24        (No response.)

10:45:58  25               THE COURT:  Okay.  Well, I look forward to

*Laura Wells, CRR, RDR*

1   working with all of you.  Thank you very much.  Thank you.

2           MR. RASSBACH:  Thank you, Your Honor.

3           MS. D'OTTAVIO:  Thank you, Your Honor.

4       (Proceedings concluded at 10:46 a.m.)

5   *Date: September 19, 2017*

6               **COURT REPORTER'S CERTIFICATE**

7       *I, Laura Wells, certify that the foregoing is a*

8   *correct transcript from the record of proceedings in the*

9   *above-entitled matter.*

10

11               */s/ Laura Wells*

12           *Laura Wells, CRR, RMR*

13

14

15

16

17

18

19

20

21

22

23

24

25