United States District Court
Southern District of Texas
**ENTERED**
November 10, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **HARVEST FAMILY CHURCH,** *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | **CIVIL ACTION NO. 4:17-CV-2662** |
| | § | |
| **FEDERAL EMERGENCY** | § | |
| **MANAGEMENT AGENCY,** *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Plaintiffs in this case ask the Court to hold unconstitutional the policy of the Federal Emergency Management Agency ("FEMA") not to provide assistance to most houses of worship. The request comes at a time when FEMA confronts the aftermath of emergencies from California to Puerto Rico and many points in between, and is aimed at a policy that is fraught with Establishment Clause and Free Exercise issues.

The Court acknowledges its heavy sense of humility in undertaking the task before it. Particularly so in that it is asked to grant preliminary relief before plenary consideration. It also acknowledges the handicap imposed by FEMA's unwillingness either to defend the current policy or to articulate a new one.

I.     FACTUAL BACKGROUND

This is a First Amendment case. Plaintiffs are three churches, all of which provided emergency relief services during and after Hurricane Harvey, and all of which also suffered significant damage in the storm. Defendants are FEMA and its Administrator, which are responsible for coordinating the federal government's response to any natural disaster. Plaintiffs are suing FEMA because they contend that the agency's grant policy violates the Free Exercise

1

Clause. Pending before the Court are two motions: Plaintiffs' Renewed Motion for Preliminary Injunction (Doc. No. 12) and Defendants' Motion to Stay (Doc. No. 24).

On August 25, Hurricane Harvey made landfall in Texas and the federal government began to respond. That response was governed in large part by the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), which authorizes the President to provide federal assistance when the magnitude of a natural disaster exceeds the affected state or local government's ability to respond. Many of FEMA's regulations implementing the Stafford Act fall under the Public Assistance Program ("PA Program"). The PA Program specifically allows for "private nonprofit facilities" ("PNPs") to receive disaster relief grants—as long as those facilities satisfy certain eligibility criteria.

In order to be an eligible facility, a PNP must own or operate a facility that either (1) "provides a critical service, which is defined as education, utility, emergency, or medical" or (2) "provides a non-critical, but essential governmental service AND is open to the general public." FED. EMERGENCY MGMT. AGENCY, PUBLIC ASSISTANCE PROGRAM AND POLICY GUIDE 12 (2017), https://www.fema.gov/media-library-data/1496435662672-d79ba9e1edb16e60b51634af00f490ae/2017_PAPPG_2.0_508_FINAL(2).pdf ("Policy Guide"). Plaintiffs here argue that they fall under category (2) because they provide "non-critical, but essential governmental service[s]" and are "open to the general public." Their openness to the general public is not in dispute. Instead, the nature of the "non-critical, but essential governmental service[s]" that they would need to provide in order to be eligible for PA Program funding is the crux of this case.

In order to satisfy the "non-critical, but essential governmental service" requirement, a facility must provide a service that is "eligible." The list of "eligible" non-critical, essential

2

governmental services includes "hobby or at-home pursuits, such as car care, ceramics, [or] gardening," "child care," "rehabilitation programs," and "homeless shelters." The list of "ineligible" services includes "[r]eligious activities, such as worship, proselytizing, [or] religious instruction . . . ." Policy Guide at 15. The "eligible"/"ineligible" distinction creates complications because PNPs frequently provide multiple services to their communities. In such cases, FEMA reviews the facilities' "[tax] documentation," "pre-disaster charter, bylaws, and amendments," and "evidence of longstanding, routine (day-to-day) use" in order to determine what the "primary use" of the facility is. Policy Guide at 12. As FEMA explains:

> "Primary use" is the use for which more than 50 percent of the physical space in the facility is dedicated . . . . If FEMA determines that 50 percent or more of physical space is dedicated to ineligible services, the entire facility is ineligible. If the [mixed-use] facility is eligible, FEMA prorates funding based on the percentage of physical space dedicated to eligible services. The Applicant is responsible for the balance of costs to restore the facility and must restore the entire facility to receive funding for repairs to the eligible-use portions of the facility.

Policy Guide at 17. Under the "primary use" test, a house of worship that dedicates more than 50 percent of its space to religious activities is ineligible to receive any funds. In this case, Plaintiffs identify as houses of worship dedicating nearly all of their space to religious activities. They argue that the "primary use" test violates their rights under the Free Exercise Clause of the First Amendment.

## II.  PRELIMINARY INJUNCTION

"A preliminary injunction is an 'extraordinary remedy' that should not be granted unless its proponent clearly shows: (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Google, Inc. v. Hood*,

822 F.3d 212, 220 (5th Cir. 2016).

### a. Substantial likelihood of success on the merits

Plaintiffs rely on *Trinity Lutheran Church of Columbia, Inc. v. Comer*, which held that a public benefits program with an express policy of rejecting grant applications from any applicant owned or controlled by a religious entity violates the Free Exercise Clause by denying that entity an otherwise available public benefit on account of its religious status. 137 S. Ct. 2012, 2022 (2017). Plaintiffs insist that they claim no "entitlement to a subsidy," but rather "a right to participate in a government benefit program without having to disavow [a] religious character." *Id.* at 2022. Plaintiffs also maintain that there is no substantive distinction between the program at issue in *Trinity Lutheran*, which categorically excluded any applicant owned or controlled by a religious entity, and the PA Program, which effectively excludes any applicant owned or controlled by an entity dedicating at least 50 percent of its facility to ineligible religious activity, because both exemplify the kind of status-based discrimination that the Court found unconstitutional in *Trinity Lutheran*.

### b. Substantial threat of irreparable injury

Plaintiffs argue that, as a matter of law, "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Gordon v. City of Houston*, 79 F. Supp. 3d 676, 694 (S.D. Tex. 2015) (quoting *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) and citing *Elrod v. Burns*, 427 U.S. 347 (1976)). At oral argument, they characterized this injury as a "dignitary harm." Plaintiffs have also drawn the Court's attention to various provisions in the PA Program requiring potential applicants to refrain from making construction decisions until FEMA completes an environmental and historic preservation assessment, which allegedly

threaten the churches' ability to act speedily in repairing their facilities. Policy Guide at 87.

### c. Threatened injury outweighs threatened harm to enjoined party

Plaintiffs argue that, absent an injunction, they face the grievous harm of religious-status discrimination that is, quoting *Trinity Lutheran*, "odious to our Constitution," *Trinity Lutheran*, 137 S. Ct. at 2025. They emphasize that churches are being left "in the lurch" as they try to recover from the disaster. Plaintiffs also highlight that houses of worship are among the first responders in times of disaster and that religious orientation does not impede an organization's ability to provide effective recovery assistance to the general public.

### d. Will not disserve public interest

Plaintiffs note the strong public interest in the free exercise of religion and that promoting disaster relief is always in the public interest, even when the entities doing so are houses of worship.

## III. STAY REQUEST

FEMA's Motion to Stay explains that the agency is currently reconsidering its eligibility policy. During the period of reconsideration, FEMA has directed its regional administrators to implement the following practice:

> Where an eligibility review determines a PNP HOW [private nonprofit house of worship] is an eligible applicant for Public Assistance because it operates an eligible facility, FEMA should fully process this application through the standard workflow process for PNPs. Where an eligibility review determines a PNP HOW is not an eligible applicant for Public Assistance because it does not operate an eligible facility, FEMA should place the workflow process on hold until further notice from the Office of Chief Counsel (OCC).

(Doc. No. 40 at 2-3.) (internal citations omitted). Defendants cite no case law in support of their position that the mere consideration of a policy change is sufficient to justify a stay. They simply argue that a stay would not prejudice Plaintiffs because FEMA will not

deny pending applications from houses of worship during the reconsideration period.

FEMA has declined to defend the merits of its policy. FEMA has also declined to engage in a substantive analysis of the four-part criteria that govern the issuance of a preliminary injunction.

The agency has asked the Court to stay the case until November 29. This request is **DENIED.** The Court is willing, however, to delay its ruling on the Motion for Preliminary Injunction until December 1. As distinguished from a stay, the parties may continue to file pleadings and briefs within this period.

The Court has received instructive briefing from amici in support of Plaintiffs' Motion, for which it expresses gratitude. Nevertheless, as the Fifth Circuit has recognized, "Without opponents, the adversary system cannot function." *United States v. Chagra*, 701 F.2d 354, 361 (5th Cir. 1983). The Court would therefore welcome amici with differing views.

If, by December 1, FEMA's position remains unchanged, the Court will assume that FEMA concedes, at the very least, Plaintiffs' likelihood of success on the merits of this case and that the injury being suffered by Plaintiffs is irreparable. The Court will then issue its ruling on Plaintiffs' request for preliminary relief.

## IV.   CONCLUSION

For the aforementioned reasons, Defendants' Motion to Say is **DENIED.** The Court issues no ruling at this time on Plaintiffs' Renewed Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 9th of November, 2017.

_____
HON. KEITH P. ELLISON

UNITED STATES DISTRICT JUDGE