IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HARVEST FAMILY CHURCH, HI-WAY TABERNACLE, and ROCKPORT FIRST ASSEMBLY OF GOD, | Civil Action No. 4:17-cv-2662 |
| *Plaintiffs,* | BRIEF OF *AMICI CURIAE* AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, AMERICAN CIVIL LIBERTIES UNION, ACLU FOUNDATION OF TEXAS, INC., THE ANTI-DEFAMATION LEAGUE, THE BAPTIST JOINT COMMITTEE FOR RELIGIOUS LIBERTY, AND INTERFAITH ALLIANCE FOUNDATION, IN OPPOSITION TO PLAINTIFFS' EMERGENCY RENEWED MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY; WILLIAM B. LONG, Administrator of the Federal Emergency Management Agency; | |
| *Defendants.* | |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................... ii

Introduction ........................................................................................................................... 1

Identity and Interests of *Amici Curiae* ............................................................................... 1

Nature and Stage of Proceedings ........................................................................................ 3

Statement of Issues ............................................................................................................... 3

Summary of Argument ......................................................................................................... 4

Argument ............................................................................................................................... 5

I.   The Establishment Clause prohibits the direct cash grants sought by the plaintiffs ................ 5

    A.   The Establishment Clause prohibits public funding of places of worship ......................... 6

    B.   No federal court has upheld grants like those sought here ................................................. 10

II.  The Free Exercise Clause does not compel the federal government to fund repairs to places of worship ................................................................................................................. 11

    A.   The government cannot be compelled to fund religious activity ...................................... 12

    B.   The Supreme Court's recent decision in *Trinity Lutheran* is a narrow one, restricted to status-based denials of funding for *non-religious* uses ................................... 13

    C.   This case is like *Locke*, not *Trinity Lutheran* ................................................................... 14

Conclusion ............................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*American Atheists v. Detroit Downtown Development Authority*,
567 F.3d 278 (6th Cir. 2009) ................................................................................11

*Anderson v. Town of Durham*, 895 A.2d 944 (Me. 2006) ............................................13

*Annunziato v. New Haven Board of Aldermen*, 555 F. Supp. 427 (D. Conn. 1982).....................9

*Bowen v. Kendrick*, 487 U.S. 589 (1988) .....................................................................6

*Bowman v. United States*, 564 F.3d 765 (6th Cir. 2008) ......................................13, 15

*Brusca v. State Board of Education*, 405 U.S. 1050 (1972) ..........................................13

*Bush v. Holmes*, 886 So.2d 340 (Fla. Dist. Ct. App. 2004) ..........................................13

*Capitol Square Review & Advisory Board v. Pinette*, 515 U.S. 753 (1995) ..................6

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)........................16

*Columbia Union Coll. v. Oliver*, 254 F.3d 496 (4th Cir. 2001)....................................6

*Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756 (1973) .............3, 8

*Community House, Inc. v. City of Boise*, 490 F.3d 1041 (9th Cir. 2007) .............6, 9, 15

*Cutter v. Wilkinson*, 544 U.S. 709 (2005).................................................................17

*DeStefano v. Emergency Housing Group*, 247 F.3d 397 (2d Cir. 2001) .......................6

*Eulitt ex rel. Eulitt v. Maine Department of Education*, 386 F.3d 344 (1st Cir. 2004) ................13

*Everson v. Board of Education*, 330 U.S. 1 (1947) ............................................6, 7, 10

*Flast v. Cohen*, 392 U.S. 83 (1968) ............................................................................7

*Foremaster v. City of St. George*, 882 F.2d 1485 (10th Cir. 1989) ...............................9

*Foundation of Human Understanding v. United States*, 614 F.3d 1383 (Fed. Cir. 2010)............17

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*,
565 U.S. 171 (2012)....................................................................................17

*Hunt v. McNair*, 413 U.S. 734 (1973)........................................................................6

*Johnson v. Economic Development Corp.*, 241 F.3d 501 (6th Cir. 2001) ........................................6

*LeBoon v. Lancaster Jewish Community Center Association*,
   503 F.3d 217 (3d Cir. 2007)....................................................................................17

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) ............................................................................8

*Locke v. Davey*, 540 U.S. 712 (2004) ............................................................... *passim*

*Marks v. United States*, 430 U.S. 188 (1977) ...........................................................6, 14

*Mitchell v. Helms*, 530 U.S. 793 (2000) ...................................................3, 6, 7, 10

*Norwood v. Harrison*, 413 U.S. 455 (1973) ...........................................................5, 13

*Roemer v. Board of Public Works*, 426 U.S. 736 (1976)........................................6

*Rosenberger v. Rector & Visitors*, 515 U.S. 819 (1995) ..............................................10

*Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976)........................17

*Sloan v. Lemon*, 413 U.S. 825 (1973) ................................................................5, 13

*Teen Ranch, Inc. v. Udow*, 479 F.3d 403 (6th Cir. 2007) ............................................13

*Thomas v. Review Bd.*, 450 U.S. 707 (1981) ...........................................................17

*Tilton v. Richardson*, 403 U.S. 672 (1971) ..........................................................3, 7, 8

*Trinity Lutheran Church of Columbia v. Comer*, 137 S. Ct. 2012 (2017)........................... *passim*

*United States v. Seeger*, 380 U.S. 163 (1965)...........................................................17

*Widmar v. Vincent*, 454 U.S. 263 (1981).....................................................................6

*Wirtz v. City of South Bend*, 813 F. Supp. 2d 1051 (N.D. Ind. 2011)............................9

*Zelman v. Simmons-Harris*, 536 U.S. 639 (2002)........................................................12

**Other Authorities**

5 Annals of Congress 92 (1834), http://bit.ly/2uLkHDH ..............................................7

*A Bill Establishing A Provision for Teachers of the Christian Religion* (1784),
   http://bit.ly/2ssSCRw .....................................................................................16

Authority of Department of Interior to Provide Historic Preservation Grants to Historic
        Religious Properties Such as the Old North Church, 27 Op. O.L.C. 91 (2003) ......................11

James Madison, *Memorial and Remonstrance Against Religious Assessments* (1785),
        http://bit.ly/2pPvjz5 .................................................................................................................6

Pa. Const., Art. II (1776)....................................................................................................................17

Thomas Jefferson, *A Bill for Establishing Religious Freedom* (1785),
        http://bit.ly/1lfgdjl .............................................................................................................6, 16

## INTRODUCTION

The government is correct that this case has serious standing and ripeness problems and that this Court therefore should not address the constitutional questions raised by the plaintiffs' preliminary-injunction motion.  But in the event that the Court does reach the constitutional questions, the *amici* civil-liberties and civil-rights organizations explain that the plaintiffs' constitutional arguments are incorrect.

When houses of worship assist the government with disaster recovery, it is permissible for the government to reimburse them (on the same terms as other institutions) for the secular emergency services that they provide.  Even in the wake of a terrible disaster, however, the government must comply with constitutional restrictions that protect religious freedom by ensuring that religious worship is supported solely by private funds.  The Establishment Clause of the First Amendment prohibits public funding of repairs of church sanctuaries and other buildings that are used principally for religious activities.  And the First Amendment's Free Exercise Clause does not supersede that prohibition or otherwise require public funds to be put to the support of religious uses.

## IDENTITY AND INTERESTS OF *AMICI CURIAE*

Americans United for Separation of Church and State is a national, nonsectarian public-interest organization that is committed to preserving the constitutional principles of religious freedom and separation of church and state.  Since its founding in 1947, Americans United has participated as a party, counsel, or *amicus curiae* in many of the leading church-state cases decided by the U.S. Supreme Court and by federal and state appellate and trial courts across the country.  Americans United represents more than 125,000 members and supporters, including many in the State of Texas.  Americans United believes that ensuring that religion is supported

1

solely by private funds is the best way to protect the religious freedom of taxpayers, to preserve the independence of houses of worship, and to promote amity among religious groups.

The American Civil Liberties Union is a nationwide, nonprofit, nonpartisan organization with over 1.5 million members dedicated to defending the principles embodied in the U.S. Constitution and our nation's civil-rights laws.  The ACLU Foundation of Texas, Inc. is a state affiliate of the national ACLU.  For nearly a century, the ACLU has been dedicated to preserving religious liberty, including the right to be free from compelled support for religious institutions and activities.

The Anti-Defamation League was organized in 1913 with a dual mission to stop the defamation of the Jewish people and to secure justice and fair treatment for all.  Today, it is one of the world's leading organizations fighting hatred, bigotry, discrimination, and anti-Semitism, and advocating for civil rights for all.  To this end, ADL is a steadfast supporter of antidiscrimination laws as well as the religious liberties guaranteed by both the Establishment and Free Exercise Clauses.  ADL staunchly believes that the Free Exercise Clause is a critical means to protect individual religious exercise, but it must not be used as a vehicle to discriminate by enabling some Americans to impose their religious beliefs on others, and it must not override the freedom of conscience of taxpayers by requiring them to subsidize religious worship.

The Baptist Joint Committee for Religious Liberty is an education and advocacy organization that serves fifteen supporting organizations, including state and national Baptist conventions and conferences, as well as congregations throughout Texas and the United States. BJC deals exclusively with religious liberty issues and believes that vigorous enforcement of both the Establishment and Free Exercise Clauses is essential to protecting religious liberty for all Americans.  Since its inception in 1936, the BJC has defended the constitutional boundaries

between the institutions of religion and government in the U.S. Congress, in the courts, and at state and local levels.  The BJC has filed *amicus curiae* briefs in more than one hundred cases in the courts, including most of the U.S. Supreme Court's cases dealing with religious liberty.

Interfaith Alliance Foundation is a 501(c)(3) nonprofit organization that celebrates religious freedom by championing individual rights, promoting policies to protect both religion and democracy, and uniting diverse voices to challenge extremism.  Founded in 1994, Interfaith Alliance Foundation's members belong to 75 different faith traditions as well as no faith tradition.  Interfaith Alliance Foundation has a long history of working to ensure that religious freedom is a means of safeguarding the rights of all Americans and is not misused to favor the rights of some over others.

**NATURE AND STAGE OF PROCEEDINGS**

The Plaintiffs have moved for a preliminary injunction to prohibit the Federal Emergency Management Agency from enforcing an internal policy barring reconstruction grants for buildings that are used principally for religious activities.  Doc. No. 12.  FEMA has decided to change this policy, however, and has submitted a new policy for administrative review.  *See* Doc. No. 54.

**STATEMENT OF ISSUES**

1.  Whether the Establishment Clause prohibits FEMA from issuing grants for repairs to buildings that are used principally for religious activities.  **Standard:**  Would the proposed direct grant of public funds support religious activities?  *See Mitchell v. Helms*, 530 U.S. 793, 840, 857 (2000) (controlling concurring opinion of O'Connor, J.); *Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 777 (1973); *Tilton v. Richardson*, 403 U.S. 672, 683 (1971).

2.   Whether the First Amendment's Free Exercise Clause requires FEMA to issue grants for repairs to buildings that are used principally for religious activities.  **Standard:**  Would the proposed grants support solely secular uses?  Is the prohibition on the grants based solely on religious status?  And is there no traditional governmental antiestablishment interest supporting the prohibition?  *See Trinity Lutheran Church of Columbia v. Comer*, 137 S. Ct. 2012, 2017–19, 2023–25 (2017); *Locke v. Davey*, 540 U.S. 712, 719–23 (2004).

## SUMMARY OF ARGUMENT

Many people and institutions—including houses of worship—suffered grave harm from Hurricane Harvey.  But even in the most difficult of times, we must adhere to the longstanding principles protected by the First Amendment.  The Establishment Clause was intended to preserve religious freedom by ensuring that taxpayers would not be forced to support religious beliefs to which they do not subscribe, and by guaranteeing that houses of worship would not become dependent on state largesse, compete with each other for government funds, or suffer from governmental interference that accompanies public funding.

For these reasons, the Establishment Clause prohibits the government from granting public funds for the support of religious uses, including for the construction or repair of buildings used for religious worship.  The grants sought by the plaintiffs here would support repairs to church sanctuaries and other core religious facilities, and are thus plainly proscribed by the Establishment Clause.  Because providing the grants would violate the Establishment Clause, denying them cannot violate the Free Exercise Clause.

But even if providing the grants would not violate the Establishment Clause, the Free Exercise Clause would not require FEMA to issue them.  The Supreme Court has repeatedly rejected arguments that the Free Exercise Clause requires government to fund religious activity

on equal terms with secular activity.  The Court's recent decision in *Trinity Lutheran Church of Columbia v. Comer*, 137 S. Ct. 2012 (2017), required religious institutions to be given equal eligibility for public funding only in very narrow circumstances: (i) the funding does not support religious uses but instead aids only secular, safety-related expenditures; (ii) the denial of funding is not supported by any traditional governmental antiestablishment interest; and (iii) the denial is based solely on the applicant's religious status.  Here, the requested grants would support religious activities; denial of the grants is justified by traditional governmental interests in not funding construction or repair of places of worship; and the grant determinations are based on how a facility is used, not on the religious status of the institution that owns the facility.

## ARGUMENT

### I.    The Establishment Clause prohibits the direct cash grants sought by the plaintiffs.

The plaintiffs premise their arguments principally on the Supreme Court's decision in *Trinity Lutheran*.  But in that case, the grant at issue paid only for resurfacing of a playground, and there was no evidence that the playground was used for religious purposes.  137 S. Ct. at 2017–18, 2024 n.3.  The Court therefore determined that the grant would not have supported religious activity, and the Court assumed without analysis, based on the parties' agreement, that providing the grant would not violate the Establishment Clause.  *See id.* at 2019, 2024 n.3.  Here, the requested grants *would* violate the Establishment Clause, because the Establishment Clause prohibits public funding of construction or repair of facilities that are used for religious activities.

When the Establishment Clause prohibits funding, neither the Free Exercise Clause nor any other constitutional provision can override it.  *See Norwood v. Harrison*, 413 U.S. 455, 462, 469 (1973); *Sloan v. Lemon*, 413 U.S. 825, 834–35 (1973).  Compliance with the Establishment Clause is a compelling governmental interest that satisfies heightened scrutiny even if such

scrutiny is triggered under another clause of the Constitution. *See Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 761–62 (1995) (four-Justice plurality); *id.* at 783 (O'Connor, J., concurring); *Widmar v. Vincent*, 454 U.S. 263, 271 (1981).

### A. The Establishment Clause prohibits public funding of places of worship.

The framers of our constitutional order believed that public funding of religion would violate the freedom of conscience of taxpayers by forcing them to support religious beliefs to which they do not subscribe; would weaken religious institutions by causing them to become dependent on governmental largesse; would undermine the independence of houses of worship by leading to governmental interference in their internal affairs; and would create religiously based civil strife by triggering competition between denominations for state aid. *See* Thomas Jefferson, *A Bill for Establishing Religious Freedom* (1785), http://bit.ly/1lfgdjl; James Madison, *Memorial and Remonstrance Against Religious Assessments* ¶¶ 1-3, 6, 11 (1785), http://bit.ly/2pPvjz5. The Establishment Clause was intended to prevent these evils. *See, e.g.*, *Everson v. Bd. of Educ.*, 330 U.S. 1, 12–13 (1947).

A long line of Supreme Court decisions thus holds that public funds must not be used to support religious activities. *See Mitchell v. Helms*, 530 U.S. 793, 840, 857 (2000) (controlling concurring opinion of O'Connor, J.)[1]; *Bowen v. Kendrick*, 487 U.S. 589, 621 (1988); *Roemer v. Bd. of Pub. Works*, 426 U.S. 736, 754–55, 759–60 (1976); *Hunt v. McNair*, 413 U.S. 734, 743 (1973); *Everson*, 330 U.S. at 16. This principle applies even when public funding is

---

[1] Justice O'Connor's concurring opinion in *Mitchell* represents controlling law because she provided the decisive vote to sustain the judgment on narrower grounds than the plurality in the case. *See Marks v. United States*, 430 U.S. 188, 193 (1977); *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1058 (9th Cir. 2007); *Columbia Union Coll. v. Oliver*, 254 F.3d 496, 504 n.1 (4th Cir. 2001); *DeStefano v. Emergency Hous. Grp.*, 247 F.3d 397, 418–19 (2d Cir. 2001); *Johnson v. Econ. Dev. Corp.*, 241 F.3d 501, 510 n.2 (6th Cir. 2001).

evenhandedly allocated among religious and secular institutions through neutral selection criteria.  *Mitchell*, 530 U.S. at 837–42 (controlling concurrence of O'Connor, J.).

"[P]roviding funds for the construction of churches" is therefore "palpably unconstitutional conduct" under the Establishment Clause.  *Flast v. Cohen*, 392 U.S. 83, 98 n.17 (1968).  For it was the American colonists' "indignation" toward "[t]he imposition of taxes to pay ministers' salaries and to build and maintain churches and church property . . . which found expression" in the Establishment Clause.  *See Everson*, 330 U.S. at 11.  As Congressman Benjamin Huntington explained during debate on its language, the Establishment Clause was intended to restrict compelled funding of "building of places of worship" to the same extent that it would restrict compelled "support of ministers."  *See* 5 Annals of Cong. 92 (1834), http://bit.ly/2uLkHDH.

Indeed, the Supreme Court's cases prohibit the use of public funds not only to construct or repair places of worship but also to build or maintain other buildings that are used for religious activities.  In *Tilton v. Richardson*, 403 U.S. 672 (1971), for example, the Court partially invalidated a statute that provided grants to colleges and universities, including religiously affiliated institutions, for the construction of educational facilities.  The statute prohibited the funding of "any facility used or to be used for sectarian instruction or as a place for religious worship," but this restriction expired twenty years after a facility's construction.  *Id.* at 675, 683.  The Court concluded that the statute and the grants issued under it were unconstitutional to the extent that the restriction on religious use of the publicly funded buildings expired after twenty years.  *Id.* at 683–84, 689.  The Court reasoned that if, after twenty years, a building were used for religious purposes, "the original federal grant will in part have the effect of advancing religion."  *Id.* at 683.  The Court explained that "[i]t cannot be assumed that a

7

substantial structure has no value after that [twenty-year] period and hence the unrestricted use of a valuable property is in effect a contribution of some value to a religious body." *Id.*[2]

Likewise, in *Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756, 774–80 (1973), the Supreme Court invalidated a New York statute that provided private schools, including parochial schools, with grants for the maintenance and repair of their facilities. The grants were not accompanied by any restriction limiting them "to the upkeep of facilities used exclusively for secular purposes." *Id.* at 774. Relying on *Tilton*, the Court reasoned:

> If tax-raised funds may not be granted to institutions of higher learning where the possibility exists that those funds will be used to construct a facility utilized for sectarian activities 20 years hence, *a fortiori* they may not be distributed to elementary and secondary sectarian schools for the maintenance and repair of facilities without any limitations on their use.

*Id.* at 776–77. The Court further stated, "[i]f the State may not erect buildings in which religious activities are to take place, it may not maintain such buildings or renovate them when they fall into disrepair." *Id.* at 777. And rejecting an argument similar to the plaintiffs' contention here that providing the desired grants would be legal because they would serve a secular interest in disaster relief (*see* Doc. No. 12-5 at 20–21), the Court held that a state's "concern for an already overburdened public school system" and "interest in preserving a healthy and safe educational environment for all of its schoolchildren" could not justify state-funded maintenance or repair of buildings used for religious instruction. *Id.* at 773–74.

Consistent with these decisions, federal circuit and district courts have repeatedly invalidated the provision of public funding or property to religious institutions for the

---

[2] Though this opinion was by a four-Justice plurality, a fifth Justice agreed with this analysis. *See Lemon v. Kurtzman*, 403 U.S. 602, 665 n.1 (1971) (opinion of White, J., concerning *Tilton* and *Lemon*).

construction, maintenance, or improvement of buildings that are or can be used for religious

instruction or activity.  For instance, in *Community House, Inc. v. City of Boise*, 490 F.3d 1041,

1059–60 (9th Cir. 2007), the Ninth Circuit enjoined a city from leasing a homeless shelter to a

religious organization for one dollar per year because the lessee held daily chapel services for its

residents.  *See also Foremaster v. City of St. George*, 882 F.2d 1485, 1489 (10th Cir. 1989)

(striking down governmental electricity subsidy to church); *Wirtz v. City of S. Bend*, 813 F. Supp.

2d 1051, 1055, 1069 (N.D. Ind. 2011) (striking down city gift of property for construction of

football field to parochial school that required all school athletic events and practices to be

preceded or followed by prayer), *appeal dismissed as moot*, 669 F.3d 860 (7th Cir. 2012);

*Annunziato v. New Haven Bd. of Aldermen*, 555 F. Supp. 427, 433 (D. Conn. 1982) (striking

down city transfer of land for one dollar to religious organization that intended to run religious

school on property).

  The grants sought by the plaintiffs here would plainly violate the strict Establishment

Clause rule that public funds must not pay for the construction or repair of buildings that are

used for religious worship or activity.  The plaintiffs concede that each of them "uses more than

50% of its physical space more than 50% of the time for religious activities."  Doc. No. 11 ¶ 47.

And the plaintiffs make no pretense of seeking funding only for repairs to buildings (or even

portions thereof) that are not used for religious activities.  Instead, the plaintiffs admit that "what

*this* lawsuit is about" is whether FEMA should be compelled to give a "grant to a house of

worship to repair its devastated sanctuary."  Doc. No. 34 at 1.  In addition to desiring federal

funds to repair severe damage to their sanctuaries, the plaintiff churches want federal money to

fix other facilities that are religious in nature or support religious activity, such as a fellowship

hall, a church steeple, pastoral offices, and a parsonage.  *See* Doc. No. 11 ¶¶ 57–59, 72–73.  The

plaintiffs seek both "Emergency Work" grants to pay for interim measures to preserve their core facilities—including fixing "structural damage"—and "Permanent Work" grants "to restore their property to their pre-disaster design and functions." *Id.* ¶¶ 61–67.  Indeed, one of the plaintiffs will likely need to demolish and rebuild its sanctuary (*id.* ¶ 73), and another will likely need to demolish and rebuild its fellowship hall and pastoral offices (*id.* ¶ 72).  Hence, the plaintiffs want nothing less than federal funding to reconstruct places of worship.  There can be no question that, by stabilizing, repairing, or rebuilding core church facilities, the desired grants will support religious worship and other religious activities.

**B.  No federal court has upheld grants like those sought here.**

The plaintiffs cite no federal cases upholding public funding that supported religious activities through repairs to integral facets of places of worship, and there are none.

As the plaintiffs point out (Doc. No. 12-5 at 19), the Establishment Clause permits provision to churches of "general government services [such] as ordinary police and fire protection, connections for sewage disposal, [and] public highways and sidewalks," as those services are "so separate and so indisputably marked off from the religious function" (*Everson*, 330 U.S. at 17–18).  But here, instead of basic governmental services, the plaintiffs seek direct cash grants that would substantially support their religious functions.  The Supreme Court has "recogni[zed] . . . special dangers associated with direct money grants to religious institutions," for "this form of aid falls precariously close to the original object of the Establishment Clause's prohibition."  *Mitchell*, 530 U.S. at 855–56 (controlling concurrence of O'Connor, J.); *accord id.* at 818–19 (plurality opinion) ("[o]f course, we have seen 'special Establishment Clause dangers' when *money* is given to religious schools or entities directly") (quoting *Rosenberger v. Rector & Visitors*, 515 U.S. 819, 842 (1995)).  What is more, basic public services such as police, fire,

10

sewage, and roads are universally provided to all in need, while the FEMA grants here are competitive ones awarded based on discretionary criteria, out of a finite pot of funds.  *See* Doc. No. 12-5 at 19; Doc. No. 30 at 7.

The plaintiffs also rely (Doc. No. 12-5 at 19–20) on *American Atheists v. Detroit Downtown Development Authority*, 567 F.3d 278 (6th Cir. 2009).  But the grant program there funded refurbishment of building exteriors only, was not "diver[ted]" "to further" any church's "religious mission," and was available to all property owners in a section of downtown Detroit. *See id.* at 281–83, 292–93.  Here, the plaintiffs seek grants that would fund repairs of church interiors and support religious worship, and the grants are competitive and are allocated through discretionary criteria.

The plaintiffs further rely (Doc. No. 12-5 at 20) on a 2003 U.S. Department of Justice memorandum approving historical-preservation funding for the Old North Church in Boston. *See* Authority of Department of Interior to Provide Historic Preservation Grants to Historic Religious Properties Such as the Old North Church, 27 Op. O.L.C. 91 (2003).  But the funding there went to a nonreligious nonprofit organization—separate from the church's congregation— that managed the building's historical programs and preservation, and the building principally served as a living historical museum for the public because of its pivotal "one if by land, and two if by sea" role in the Revolutionary War.  Here, the grants would go directly to churches, not to secular nonprofit organizations, and the churches do not principally serve as museums.

## II.     The Free Exercise Clause does not compel the federal government to fund repairs to places of worship.

Even if the Establishment Clause did not bar the direct cash grants sought here, the Free Exercise Clause would not compel them.  The U.S. Supreme Court and other courts have repeatedly rejected arguments that the Constitution requires that tax funding available for secular

11

uses also be made available for religious uses—even if the Establishment Clause would permit that funding.  The Court's recent decision in *Trinity Lutheran*, 137 S. Ct. 2012, did not change that rule, because it involved funding that did not serve religious uses.

### A.  The government cannot be compelled to fund religious activity.

In *Locke v. Davey*, 540 U.S. 712 (2004), the Supreme Court held that a Washington State regulation prohibiting use of state scholarship funds to pursue theology degrees did not violate the Free Exercise, Equal Protection, Free Speech, or Establishment Clauses.  The Court explained that although allowing the scholarship funds to be so used would not violate the Establishment Clause, "there are some state actions permitted by the Establishment Clause but not required by the Free Exercise Clause."  *Id.* at 719.[3]

The Court noted that the scholarship applicant was not denied a benefit based on his religious beliefs or status; instead, "[t]he State ha[d] merely chosen not to fund a distinct category of instruction."  *Id.* at 720–21.  The Court emphasized that the limitation on funding was supported by an important, traditional governmental interest in not financing the training of ministers or religious instruction.  *Id.* at 722–23.  Because the governmental interest was "substantial" and any burden on religion was "minor," the student's Free Exercise claim failed. *Id.* at 725.  The Court rejected the student's other claims in footnotes.  *Id.* at 720 n.3, 725 n.10.

*Locke*'s conclusion was far from novel.  Earlier Supreme Court decisions had also flatly rejected arguments that the Free Exercise or Equal Protection Clauses require governmental bodies to provide funding for religious education if they fund public or private secular education.

---

[3] *Zelman v. Simmons-Harris*, 536 U.S. 639, 649 (2002), had held two years earlier that scholarships delivered to parents or students who are free to use them at religious or secular institutions are not subject to the strict Establishment Clause limitations applicable to direct grants to religious institutions.

*See Norwood*, 413 U.S. at 462, 469; *Sloan*, 413 U.S. at 834–35; *Brusca v. State Bd. of Educ.*, 405 U.S. 1050 (1972), *aff'g mem.*, 332 F. Supp. 275 (E.D. Mo. 1971).

Following *Locke*, numerous appellate courts have rejected contentions that the Constitution requires governmental bodies to provide funding for religious uses on the same terms as for secular uses.  *See Bowman v. United States*, 564 F.3d 765, 774 (6th Cir. 2008) (funding by federal government of religious ministry to youth); *Teen Ranch, Inc. v. Udow*, 479 F.3d 403, 409–10 (6th Cir. 2007) (religious programming in residential services for abused, neglected, and delinquent children); *Eulitt ex rel. Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 353–57 (1st Cir. 2004) (religious education); *Bush v. Holmes*, 886 So.2d 340, 343–44, 362–66 (Fla. Dist. Ct. App. 2004) (religious education), *aff'd on other grounds*, 919 So.2d 392 (Fla. 2006); *Anderson v. Town of Durham*, 895 A.2d 944, 958–61 (Me. 2006) (religious education).

## B. The Supreme Court's recent decision in *Trinity Lutheran* is a narrow one, restricted to status-based denials of funding for *non-religious* uses.

The recent decision in *Trinity Lutheran*—the case on which the plaintiffs principally rely—is limited to circumstances far different from those of *Locke* and the other above-cited cases.  The Court held that a state violated the Free Exercise Clause by denying a grant to a church-operated preschool—solely because of its religious identity—to purchase a rubber surface for its playground.  137 S. Ct. at 2017–18, 2024–25.

The record in *Trinity Lutheran* contained no evidence that the playground was used for religious activity.  *See id.* at 2017–18, 2024 n.3.  The Court thus strictly limited the scope of its holding: "This case involves express discrimination based on religious identity with respect to

playground resurfacing. *We do not address religious uses of funding* or other forms of discrimination." *Id.* at 2024 n.3 (emphasis added).[4]

Indeed, *Trinity Lutheran* reaffirmed *Locke*'s holding that "there is 'play in the joints' between what the Establishment Clause permits and the Free Exercise Clause compels." *Id.* at 2019 (quoting *Locke*, 540 U.S. at 718). The *Trinity Lutheran* Court emphasized that, in the case before it, the state had "expressly den[ied] a qualified religious entity a public benefit *solely* because of its religious character." *Id.* at 2024 (emphasis added). *Locke* was different because the plaintiff there "was not denied a scholarship because of who he *was*; he was denied a scholarship because of what he proposed *to do*—use the funds to prepare for the ministry." *Id.* at 2023.

Moreover, the denial of funding in *Locke* was based on a governmental "interest in not using taxpayer funding to pay for the training of clergy" that "lay at the historic core of the Religion Clauses." *Id.* "[N]othing of the sort [could] be said about a program to use recycled tires to resurface playgrounds." *Id.*

## C. This case is like *Locke*, not *Trinity Lutheran*.

Even if the grants sought by the plaintiffs are not barred by the Establishment Clause, the FEMA policy that prohibits the grants is well within the "play in the joints" recognized in *Locke*, 540 U.S. at 718. For three principal reasons, *Locke*—not *Trinity Lutheran*—governs here.

---

[4] Though this footnote was joined by only four Justices, it is controlling because it set forth narrower grounds for the judgment than did the two Justices who joined the body of the majority opinion but not the footnote. *See Trinity Lutheran*, 137 S. Ct. at 2025–26 (concurring opinions of Thomas, J., and Gorsuch, J.); *Marks*, 430 U.S. at 193. In addition, Justice Breyer, who did not join any of the majority opinion, wrote a concurrence expressing views similar to those in the footnote. *See id.* at 2026–27.

First, as in *Locke*, and unlike in *Trinity Lutheran*, FEMA's policy is based on how funds are used, not on grant applicants' identity as religious or secular.  FEMA's policy permits both secular and religious institutions—including houses of worship—to receive grants for repairs to facilities that are used principally for certain kinds of "critical" or "essential" secular services, such as sheltering the homeless, feeding the hungry, treating substance abuse, or providing childcare.  *See* Doc. No. 30 at 8–9 and citations therein.[5]  FEMA's policy further prohibits both secular and religious institutions from receiving grants for facilities that are principally used for a variety of other kinds of purposes, including not only religious worship, instruction, and activity, but also political education, vocational instruction, and athletic training.  *See id.* at 9 and citations therein.  Thus the use of the funded facility, not the religious or secular status of the facility's owner, determines eligibility for grants.

Second, like *Locke* and unlike *Trinity Lutheran*, this case straightforwardly involves "religious uses of funding."  *Cf. Trinity Lutheran*, 137 S. Ct. at 2024 n.3.  The plaintiffs seek grants not for playgrounds, but for repair of integral elements of church buildings, within which active congregations conduct worship and other "essentially religious endeavor[s]."  *See Locke*, 540 U.S. at 721.  As explained above, the plaintiffs desire federal funds to repair inherently religious structures used for inherently religious purposes, including church sanctuaries—at least one of which will likely need to be demolished and rebuilt—a church steeple, and a fellowship hall.  *See* Doc. No. 11 ¶¶ 57–59, 72–73.  Indeed, at least one of the plaintiff churches indicated that it needs repairs "to resume religious services."  *Id.* ¶ 73.

---

[5] Such grants would violate the Establishment Clause, however, if the recipient institutions inject religion into the provision of otherwise secular services by, for example, proselytizing service beneficiaries.  *See, e.g.*, *Bowen*, 487 U.S. at 621; *Cmty. House*, 490 F.3d at 1059–60.

Relying on *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), the plaintiffs appear to contend that the Free Exercise Clause prohibits the government from denying funding for activities because of their religious nature.  *See* Doc. No. 12-5 at 16. That argument is contrary not only to *Locke* and *Trinity Lutheran*, which reaffirm that government is never required to fund "'essentially religious endeavor[s]'" (*see Trinity Lutheran*, 137 S. Ct. at 2023 (quoting *Locke*, 540 U.S. at 721)), but also to the Establishment Clause itself (*see supra* § I(A)); indeed, it would read the Establishment Clause's prohibition against funding of religion out of the Constitution.  *Lukumi* does not support such a radical proposition; the case only struck down a municipality's effort to suppress through criminal sanctions a particular religious practice of a particular sect.  *See* 508 U.S. at 533–40.  FEMA's policy treats all religious groups equally and further treats religious activities similarly to a variety of other, comparable secular activities, such as political education and vocational instruction.  *See* Doc. No. 30 at 8–9 and citations therein.

The third factor that brings this case within the scope of *Locke* rather than *Trinity Lutheran* is that FEMA's policy serves a historic and substantial governmental interest in not funding construction or repair of places of worship.  In explaining the scope of traditional governmental "antiestablishment interests," *Locke* looked to the "public backlash" (*id.* at 722 n.6) that resulted from Patrick Henry's proposal in Virginia of *A Bill Establishing A Provision for Teachers of the Christian Religion* (1784), http://bit.ly/2ssSCRw, which called for tax funding for "the providing places of divine worship," among other aspects of religious ministries.  In response to that proposal, Thomas Jefferson drafted the *Bill for Establishing Religious Freedom*, which proclaimed that "'no man shall be compelled to frequent or support any religious worship, place, or ministry whatsoever.'"  *See Locke*, 540 U.S. at 722 n.6 (quoting

16

Jefferson's *Bill*).  To illustrate traditional governmental antiestablishment interests, *Locke* further cited state constitutional provisions that barred compelling any person to "'erect or support any place of worship.'"  *See id.* at 723 (quoting Pa. Const., Art. II (1776) and citing other, similar state constitutional clauses).[6]

## CONCLUSION

Far from compelling FEMA to provide grants to repair places of worship, the Constitution prohibits it from doing so.  If the Court concludes that this case is justiciable, it should therefore hold that the plaintiffs are unlikely to succeed on the merits of their claims and deny their request for a preliminary injunction.


Respectfully submitted,

By:   /s/ Alex J. Luchenitser                                    Date: November 30, 2017
          Alex J. Luchenitser (attorney-in-charge)

---

[6] In passing, the plaintiffs and one of their *amici* suggest that FEMA's policy calls for a constitutionally improper inquiry by requiring FEMA to determine whether facilities are used principally for religious activities.  *See* Doc. No. 12-5 at 15–16 n.3; Doc. No. 25-2 at 12–13.  This contention is not relevant to this case, however, because the plaintiffs admit that their facilities are used predominantly for religious activities.  *See* Doc. No. 11 ¶ 47.  In any event, the U.S. Constitution does not prohibit courts from inquiring about *whether* something *is* religious; courts must only avoid analyzing whether religious beliefs are valid, or dissecting the content of religious beliefs in a manner that impermissibly embroils the courts in theological questions.  *See, e.g.*, *Thomas v. Review Bd.*, 450 U.S. 707, 714 (1981); *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709–10 (1976); *United States v. Seeger*, 380 U.S. 163, 184–85 (1965); *see also Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005).  Accordingly, federal courts routinely examine whether institutions are religious to determine, for example, whether they qualify for exemptions for religious organizations from employment or tax laws.  *See, e.g.*, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 699 (2012); *Found. of Human Understanding v. United States*, 614 F.3d 1383, 1388–91 (Fed. Cir. 2010); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 226–31 (3d Cir. 2007).

Richard B. Katskee (appearing *pro hac vice*)
Alex J. Luchenitser (attorney-in-charge; appearing *pro hac vice*)
Americans United for Separation of Church and State*
1310 L Street NW, Suite 200
Washington, DC 20005
Tel.: 202-466-7306 / Fax: 202-466-3353
luchenitser@au.org

* Alison Tanner, a 2017 law-school graduate who is scheduled to be sworn into the District of Columbia Bar on December 4, 2017, substantially contributed to the preparation of this brief.

Of counsel:

Donald H. Flanary, III
Texas Bar No. 24045877
Southern District of Texas Bar No. 592407
Flanary Law Firm, PLLC
1005 S. Alamo St.
San Antonio, TX 78210
Tel.: 210-738-8383 / Fax: 210-738-9426
donflanary@hotmail.com

Daniel Mach (*pro hac vice* motion pending)
Heather L. Weaver (*pro hac vice* motion pending)
American Civil Liberties Foundation
915 15th Street NW
Washington, DC 20005
Tel.: 202-675-2330 / Fax: 202-546-0738
dmach@aclu.org / hweaver@aclu.org

Edgar Saldivar
Texas Bar No. 24038188
Southern District of Texas Bar No. 618958
ACLU Foundation of Texas, Inc.
1500 McGowen, Suite 250
Houston, TX 77004
Tel.: 713-942-8146 x111 / Fax: 713-942-8966
esaldivar@aclutx.org

Marvin D. Nathan
Texas Bar No. 14817000
Southern District of Texas Bar No. 9408
Mark S. Finkelstein
Texas Bar No. 07015100
Southern District of Texas Bar No. 5543
Ian Scharfman
Texas Bar No. 00788360
Southern District of Texas Bar No. 16823
Steven M. Freeman (*pro hac vice* motion to follow)
David L. Barkey (*pro hac vice* motion to follow)
Rachel G. Bresner
Texas Bar No. 24103804 (*pro hac vice* motion to follow)
Anti-Defamation League
605 Third Avenue
New York, NY 10158
Tel.: (212) 885-7859 / Fax: (212) 885-5882
sfreeman@adl.org / dbarkey@adl.org / rbresner@adl.org

K. Hollyn Hollman (*pro hac vice* motion to follow)
Jennifer L. Hawks
Texas Bar No. 24081718 (*pro hac vice* motion to follow)
Baptist Joint Committee for Religious Liberty
200 Maryland Ave. N.E.
Washington, DC 20002
Tel.: 202-544-4226 / 202-544-2094
hhollman@bjconline.org / jhawks@bjconline.org

## CERTIFICATE OF SERVICE

I certify that on November 30, 2017, I electronically filed this document, together with

any attachments thereto, with the Clerk of Court by using CM/ECF, which automatically serves

all counsel of record for all parties.

By:    /s/ Alex J. Luchenitser                              Date: November 30, 2017
       Alex J. Luchenitser (attorney-in-charge)

Alex J. Luchenitser (attorney-in-charge; appearing *pro hac vice*)
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Tel.: 202-466-7306 / Fax: 202-466-3353
luchenitser@au.org